**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

KIMBERLY SOLOMON-WALLACE, *et al*.,

Plaintiffs,

vs.

GARDAWORLD CASH SERVICES, INC.
d/b/a GARDAWORLD CASH,

Defendant.

Case No. 9:26-cv-80594-AMC

District Judge Cannon

**DEFENDANT'S CONSOLIDATED MOTION TO DISMISS ALL OF PLAINTIFF
SOLOMON-WALLACE'S CLAIMS AND ALL PLAINTIFFS' ERISA § 502(a)(2)
CLAIMS, AND MOTION TO COMPEL PLAINTIFFS MILEY'S AND GREEN'S
REMAINING CLAIMS INTO INDIVIDUAL ARBITRATION
AND INCORPORATED MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

I.     PROCEDURAL HISTORY ..................................................................................... 2

II.    RELEVANT BACKGROUND ................................................................................ 3

    A.    GardaWorld's Plan And Wellness Programs ............................................... 3

    B.    Plaintiffs' Participation In The Plan And Relevant Agreements .................... 4

        1.    Plaintiff Solomon-Wallace ............................................................... 4

        2.    Plaintiffs Miley and Green ............................................................... 6

    C.    Plaintiffs' Claims ........................................................................................ 8

LEGAL ANALYSIS ........................................................................................................ 8

I.     SOLOMON-WALLACE'S CLAIMS SHOULD ALL BE DISMISSED PURSUANT TO RULE 12(b)(1) .................................................................................. 8

    A.    Relevant Standard ....................................................................................... 8

    B.    Solomon-Wallace's Claims Should Be Dismissed Pursuant To The Terms of Her Release Agreement And Covenant Not To Sue GardaWorld ................... 9

II.    ALL PLAINTIFFS' ERISA § 502(a)(2) CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) .............................................................................. 11

    A.    Relevant Standard ...................................................................................... 11

    B.    Plaintiffs' ERISA § 502(a)(2) Claims Should Be Dismissed Because They Do Not Plausibly Allege an Injury to the Plan ................................................... 11

    C.    The Prohibited Transaction Claims Should Be Dismissed For The Separate Reason That Plaintiffs Have Not Sufficiently Alleged An Actionable Transaction Involving The Use Of Plan Assets ......................................... 14

III.   MILEY'S AND GREEN'S REMAINING CLAIMS, WHICH ALL SEEK RELIEF UNDER ERISA § 502(a)(3), MUST BE COMPELLED INTO INDIVIDUAL ARBITRATION ..................................................................................................... 16

    A.    Relevant Standard ...................................................................................... 16

    B.    The Arbitration Agreements Are Valid And Enforceable ........................... 16

    C.    Miley And Green Agreed To Arbitrate Their ERISA § 502(a)(3) Claims Against GardaWorld ................................................................................. 18

    D.    GardaWorld Has Not Waived Its Right To Arbitrate ................................. 19

CONCLUSION.................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*13 Parcels LLC v. Laquer*,
104 So. 3d 377 (Fla. Dist. Ct. App. 2012) ..................................................................19

*Amargos v. Verified Nutrition, LLC*,
653 F. Supp. 3d 1269 (S.D. Fla. 2023) ..............................................................16, 19

*Amatangelo v. Nat'l Grid USA Serv. Co.*,
2011 WL 3687563 (W.D.N.Y. Aug. 23, 2011) ..........................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................11

*Becker v. Citigroup Inc.*,
773 F. Supp. 3d 1380 (S.D. Fla. 2025) ......................................................................9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................11

*Bhim v. Rent-A-Center, Inc.*,
655 F. Supp. 2d 1307 (S.D. Fla. 2009) .....................................................................16

*Byars v. Coca-Cola Co.*,
2004 WL 1595399 (N.D. Ga. Mar. 18, 2004) ..........................................................11

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025) ................................................................15

*Caley v. Gulfstream Aero. Corp.*,
428 F.3d 1359 (11th Cir. 2005) .................................................................................16

*Cameron–Grant v. Maxim Healthcare Servs., Inc.*,
347 F.3d 1240 (11th Cir. 2003) ...................................................................................9

*Cania v. Rocket Partners, LLC*,
2025 WL 4033766 (N.D. Ga. May 19, 2025) .............................................................6

*Cano v. Home Depot, Inc.*,
2025 WL 2589567 (N.D. Ga. Aug. 26, 2025) ...........................................................14

*Casimir v. Bridgecrest Credit Co., LLC*,
2021 WL 3081017 (E.D. Wis. July 21, 2021) ...........................................................10

*Chirinian v. Travelors Co.*,
  2025 WL 2147271 (D. Minn. July 29, 2025) ........................................................................13

*Cook v. Campbell*,
  482 F. Supp. 2d 1341 (M.D. Ala. 2007) ..............................................................................11

*Dandridge v. Sherwin Williams*, *Inc.*,
  2021 WL 2228394 (M.D. Fla. May 26, 2021)......................................................................17

*Dirocco v. Victory Mktg. Agency, LLC*,
  2016 WL 11468578 (M.D. Fla. Jan. 12, 2016)......................................................................17

*Fifth Third Bancorp. v. Dudenhoeffer*,
  573 U.S. 409 (2014).............................................................................................................11

*Fisher v. GardaWorld Cash Servs., Inc. ("GardaWorld I")*,
  2025 WL 2484271 (W.D.N.C. Aug. 28, 2025)................................................................ *passim*

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000)..............................................................................................................9

*Green v. Progressive Corp.*,
  2026 WL 785004 (S.D. Ohio Mar. 30, 2026).......................................................................15

*Hannan v. Hartford Fin'l Serv., Inc.*,
  688 Fed. App'x 85 (2d Cir. 2017)........................................................................................14

*Kennedy v. Floridian Hotel*,
  998 F.3d 1221 (11th Cir. 2021) .............................................................................................4

*Labora v. MCI Telecommunications*,
  1998 WL 1572719 (S.D. Fla. July 20, 1998), *aff'd*, 204 F.3d 1121 (11th Cir.
  1999) ...................................................................................................................................10

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008)..............................................................................................................11

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir. 1990) ..............................................................................................4

*Lockheed Corp. v. Spink*,
  517 U.S. 882 (1996).............................................................................................................14

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................................9

*Lusardi v. Xerox Corp.*,
  975 F.2d 964 (3d Cir. 1992)..................................................................................................10

*Mack v. USAA Cas. Ins. Co.*,
 994 F.3d 1353 (11th Cir. 2021) ..................................................................................9

*Majkowski v. Am. Int'l Grp., Inc.*,
 2008 WL 5272193 (N.D. Ill. Dec. 16, 2008) ............................................................10

*Med–Star Cent., Inc. v. Psychiatric Hosp. of Hernando Cty., Inc.*,
 639 So. 2d 636 (Fla. 5th DCA 1994) ........................................................................17

*Noel v. Pepsico, Inc.*,
 2026 WL 558118 (S.D.N.Y. Feb. 27, 2026) ..............................................................12

*Parker v. TTEC Holdings, Inc.*,
 -- F. Supp. 3d --, 2026 WL 917789 (D. Colo. Mar. 30, 2026).................................12

*Pecoraro v. Synovus Bank*,
 2023 WL 8525114 (S.D. Fla. Dec. 6, 2023) ................................................................6

*Perez v. Avatar Holdings, Inc.*,
 2008 WL 11470949 (M.D. Fla. Mar. 5, 2008) ..........................................................10

*Schultz v. Glens Falls Hosp.*,
 2026 WL 850332 (N.D.N.Y. Mar. 26, 2026) .....................................................12, 16

*Sec'y of Labor v. Macy's, Inc.*,
 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021).........................................................13

*Seth v. Rajagopalan*,
 2013 WL 11927712 (S.D. Fla. Jan. 25, 2013) ..........................................................17

*Smith v. T–Mobile USA Inc.*,
 570 F.3d 1119 (9th Cir. 2009) ..................................................................................10

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016)..................................................................................................8

*Stanley v. George Washington Univ.*,
 394 F. Supp. 3d 97 (D.D.C. 2019), *aff'd*, 801 Fed. App'x 792 (D.C. Cir. 2020)....................10

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009)......................................................................................................9

*Thole v. U.S. Bank N.A.*,
 590 U.S. 538 (2020)......................................................................................................9

*Thompson v. Ryder Sys., Inc.*,
 2022 WL 18776108 (S.D. Fla. Oct. 11, 2022).............................................................9

iv

*Trout v. Meijer, Inc.*,
  2026 WL 1098213 (W.D. Mich. Apr. 23, 2026) ....................................................................13

*Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n, Inc.*,
  143 So. 3d 1015 (Fla. Dist. Ct. App. 2014) ............................................................................19

*Tsao v. Captiva MVP Rest. Partners, LLC*,
  986 F.3d 1332 (11th Cir. 2021) ..............................................................................................8

*Williams v. Bally's Mgmt. Grp., LLC*,
  813 F. Supp. 3d 263 (D.R.I. 2025)....................................................................................13, 14

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
  828 Fed. App'x 734 (2d Cir. 2020)........................................................................................10

**Statutes**

29 C.F.R. § 2510.3-102(c) .....................................................................................................15

29 U.S.C. § 1106.....................................................................................................................16

29 U.S.C. § 1106(a) ................................................................................................................14

29 U.S.C. § 1106(a)(1).............................................................................................................14

29 U.S.C. § 1132(a)(2).............................................................................................................13

29 U.S.C. § 1182(b) ..................................................................................................................8

ERISA § 406 ......................................................................................................................14, 16

ERISA § 502(a)(2) ........................................................................................................... *passim*

ERISA § 502(a)(3) ........................................................................................................... *passim*

ERISA § 702(b) .........................................................................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)..................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..................................................................................................... *passim*

U.S. Const. art. III, § 2, cl. 1 .....................................................................................................8

Pursuant to this Court's June 23, 2026 Order [ECF No. 36], Defendant GardaWorld Cash Services, Inc. d/b/a GardaWorld Cash ("GardaWorld") respectfully submits its consolidated motion requesting that: (1) Plaintiff Solomon-Wallace's claims all be dismissed, with prejudice, pursuant to Rule 12(b)(1) because she released all of her claims against GardaWorld and lacks Article III standing; (2) all Plaintiffs' ERISA § 502(a)(2) claims be dismissed for failure to state a claim pursuant to Rule 12(b)(6); and (3) Plaintiffs Miley's and Green's remaining claims, which all seek relief under ERISA § 502(a)(3), be compelled into individual arbitration.

## **INTRODUCTION**

This case involves two wellness programs offered by GardaWorld in connection with its medical benefit plan ("Plan"): (1) a tobacco-free wellness program; and (2) a COVID-19 vaccination wellness program. The goal of these wellness programs is to incentivize employees who participate in the Plan to be healthier, including by being tobacco-free and vaccinated against COVID-19.

Plaintiffs are current and former Plan participants who use tobacco products. Compl. [ECF No. 1] at ¶¶ 15-17. As a result of their tobacco usage (and failure to participate in the free tobacco cessation program offered in connection with the wellness program), Plaintiffs each paid an additional $100 per month for medical benefits (the "tobacco surcharge"). *See id.* at ¶¶ 15-17, 36-37. Additionally, Plaintiff Miley declined to obtain a COVID-19 vaccination and, as a result, paid an additional $100 per month (the "vaccination surcharge") for medical benefits while the COVID-19 vaccination wellness program was in effect. *See id.* at ¶¶ 16, 41.

Plaintiffs allege that the wellness programs discriminate against them by charging them higher fees to obtain medical benefits based on a health status factor in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiffs assert two types of claims: (1) claims brought under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), "on a representative basis on

1

behalf of the Plan"; and (2) claims brought under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), on an individual claim basis. *See id.* at ¶¶ 72, 79, 80, 103, 114. None of Plaintiffs' claims should proceed in this forum.

First, Plaintiff Solomon-Wallace's claims should be dismissed because she has released all of her claims against GardaWorld and agreed not to accept any monetary award or other relief that may be granted in this case. As such, Solomon-Wallace lacks the requisite standing to assert any of her claims and they should all be dismissed, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1).

Second, all of Plaintiffs' ERISA § 502(a)(2) claims should all be dismissed pursuant to Rule 12(b)(6) for several reasons, including that Plaintiffs fail to plausibly allege any harm to the Plan. Indeed, Judge Kenneth D. Bell of the United States District Court for the Western District of North Carolina already considered virtually the same allegations regarding these same GardaWorld wellness programs and dismissed the ERISA § 502(a)(2) claims for failure to plausibly allege harm to the Plan. *See Fisher v. GardaWorld Cash Servs., Inc. ("GardaWorld I")*, 2025 WL 2484271, *7-8 (W.D.N.C. Aug. 28, 2025) (dismissing ERISA § 502(a)(2) claims because the allegedly unlawful tobacco and vaccination surcharges all involve "allegations of harm to individual Plan participants, not the Plan itself").

Finally, Miley's and Green's remaining claims, which all seek relief under ERISA § 502(a)(3) on an individual claim basis, should be compelled into individual arbitration pursuant to the terms of the arbitration agreement contained in GardaWorld's Dispute Resolution Policy.

## I.     PROCEDURAL HISTORY

This is the second lawsuit filed by Plaintiffs' counsel relating to GardaWorld's wellness programs. The first lawsuit was filed in the United States District Court for the Western District of North Carolina. The complaint was brought by several current or former employees of

GardaWorld who alleged that the tobacco and vaccination surcharges were unlawful. *GardaWorld I*, 2025 WL 2484271, at \*4. Among other things, the plaintiffs alleged that GardaWorld was liable to the Plan pursuant to ERISA § 502(a)(2) for breaching its fiduciary duties and engaging in unlawful prohibited transactions in connection with the administration of the wellness programs. *Id.* at \*5, 7-8.

GardaWorld moved to dismiss the *GardaWorld I* plaintiffs' ERISA § 502(a)(2) claims for several reasons, including that the plaintiffs had not plausibly alleged any harm to the Plan. Judge Bell agreed and dismissed the ERISA § 502(a)(2) claims on August 28, 2025. *Id.* at \*7-8.

Following the dismissal of the plaintiffs' ERISA § 502(a)(2) claims, discovery revealed that the named plaintiffs never participated in the Plan and did not pay any of the challenged surcharges. As a result, the remaining claims were dismissed pursuant to Rule 12(b)(1) for lack of Article III standing on February 20, 2026.

Shortly after *GardaWorld I* was dismissed, the current Plaintiffs filed a new Complaint in the Northern District of Illinois asserting virtually the same claims that were asserted in *GardaWorld I*. The case was subsequently transferred to this District given that GardaWorld is headquartered in Boca Raton, Florida and "every key aspect of the Plan at issue was conceived, implemented, and administered from Florida." *See* Agreed Mot. To Transfer [ECF No. 18] at 1, 3.

## II.     RELEVANT BACKGROUND

### A.     GardaWorld's Plan And Wellness Programs

GardaWorld is headquartered in Boca Raton, Florida and sponsors the ERISA-governed GardaWorld Cash Services, Inc. Health and Welfare Benefit Plan (the "Plan") for the benefit of eligible employees. Compl. at ¶¶ 19-20. The Plan includes two wellness programs: (1) a tobacco-free wellness program; and (2) a COVID-19 vaccination wellness program. *Id.* at ¶¶ 16-17, 37-39, 41. Participants who use tobacco products and do not participate in the free tobacco cessation

3

program offered by the Plan pay a monthly tobacco surcharge. *Id.* Participants who refuse to obtain the COVID-19 vaccination and who do not request a medical or religious exemption to the vaccination requirement pay a monthly vaccination surcharge while the vaccination wellness program was in effect. *See id.* at ¶ 16, 41.

### B. Plaintiffs' Participation In The Plan And Relevant Agreements

#### 1. Plaintiff Solomon-Wallace

Kimberly Solomon-Wallace is a former employee of a GardaWorld affiliated company, Garda CL Great Lakes, Inc., who participated in the Plan and paid the challenged tobacco surcharge for a period of time. *See id.* at ¶¶ 15, 41, 102; *see also* Ex. A, Decl. of P. Marachly at ¶ 10.[1]

Solomon-Wallace's employment with Garda CL Great Lakes, Inc. ended on March 31, 2026 pursuant to the terms of a General Release Agreement and Resignation ("Release Agreement). *See* Ex. A, Marachly Decl. at ¶¶ 10-11, and Ex. 2, Release Agreement. Prior to executing the Release Agreement, Solomon-Wallace represented that she had "reviewed it with counsel of her choosing and fully understands it." *Id.* at Ex. 2, Release Agreement at p. 4.

In the Release Agreement, Solomon-Wallace agreed to a broad release of claims against GardaWorld, including ERISA claims, from the beginning of time up to the execution of the Release Agreement on March 31, 2026:

> **Kimberly Solomon-Wallace … agrees to and does hereby irrevocably release and forever discharge** Garda CL Great Lakes, Inc., and any of its divisions, subsidiaries, affiliates, predecessors, successors, assigns, related and parent

---

[1]   Evidence bearing on the Court's jurisdiction is admissible on a motion to dismiss for lack of subject matter jurisdiction that makes a factual attack on standing. *See, e.g., Kennedy v. Floridian Hotel*, 998 F.3d 1221, 1230 (11th Cir. 2021); *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990). Given that this motion makes a factual attack on standing, the Court may consider the Declaration and attached Release Agreement when ruling upon it.

corporations (including without limitation, **GardaWorld Cash Services, Inc**… and any of their respective directors, officers shareholders, owners, employees, benefit plans, benefit plan fiduciaries, and agents (collectively the "Released Parties"), **from any and all causes of actions or claims of any type, including, but not limited to, any claim or cause of action arising under or based on….the Employee Retirement Income Security Act of 1974 (ERISA)** (excepting claims for vested benefits, if any, to which Employee is legally entitled thereunder)…**and any claims or causes of action [] arising out of, or related to, Kimberly Solomon-Wallace's… participation in any benefit plan sponsored by Garda CL Great Lakes, Inc. or any Released Party**.

*Id.* at pp. 1-2 (emphasis added).  Solomon-Wallace also acknowledged in the Release Agreement that "this Agreement shall be effective as a full and final bar to all claims of every kind and nature, whether known or unknown, suspected or unsuspected, or fixed or contingent, released in this Agreement.[2] *Id.* at p. 2.

In addition to releasing all claims, Solomon-Wallace also agreed to waive any right to any relief awarded on any released claims:

> Kimberly Solomon-Wallace is waiving all of her rights to any recovery, compensation, or other legal, equitable or injunctive relief… from the Released Parties, or any of them, in any administrative, arbitral, judicial or other action brought by or on her behalf in connection with any claim released in this General Release Agreement and Resignation.

*Id.* at p. 2.   Solomon-Wallace also agreed not to sue on any claim released in the Release Agreement in the future.  *Id.* at p. 3.

---

[2]     Solomon-Wallace's Release Agreement includes a limited carve-out for claims not applicable here, including (1) claims for workers' compensation benefits regarding injuries sustained on August 27, 2020; (2) claims for unemployment benefits; (3) claims for vested benefits; and (4) claims for post-employment retirement benefits.  *Id.* at pp. 1-2.

### 2.    Plaintiffs Miley and Green

Miley and Green are current employees of GardaWorld affiliated companies. *See id.* at ¶¶ 15-17, 41, 102; *see also* Ex. A, Decl. of P. Marachly at ¶ 4.[3] As employees of GardaWorld affiliated companies, Miley and Green had on-demand access to the 2025 GardaWorld Employee Handbook ("Employee Handbook"). *See id.* at ¶ 5.    The Employee Handbook contains a "DISPUTE RESOLUTION POLICY ACKNOWLEDGMENT ('AGREEMENT TO ARBITRATION OF DISPUTES')." *Id.* at ¶ 6.

The Dispute Resolution Policy includes an agreement to arbitrate pursuant to the terms of the Federal Arbitration Act ("FAA"). *Id.* at Ex. 1, Dispute Resolution Policy at ¶ 1. The agreement to arbitrate (hereinafter "Arbitration Agreement") provides that both GardaWorld and the employee will submit claims arising out of the employee's employment with GardaWorld or its affiliated companies in mandatory, binding arbitration:

> Any and all past, present, or future claims that Garda may have against you, or that you may have against Garda (or any of Garda's parents, affiliates, partners, members, employees, officers, directors, owners, shareholders, investors, insurers and agents) arising out of your employment with or relating to Garda, whether arising before, during, or after your employment, including but not limited to termination of employment (collectively, the "Dispute(s)"), will be submitted for resolution to mandatory, binding arbitration.

---

[3]    The Court may consider Ms. Marachly's Declaration and the attached Dispute Resolution Policy for purposes of evaluating the merits of GardaWorld's Motion to Compel Arbitration. *See, e.g., Pecoraro v. Synovus Bank*, 2023 WL 8525114, *2 (S.D. Fla. Dec. 6, 2023), *R&R adopted*, 2024 WL 167391 (S.D. Fla. Jan. 16, 2024) (explaining that the "Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction" and that the consideration of a declaration is appropriate when ruling on a motion to compel arbitration); *Cania v. Rocket Partners, LLC*, 2025 WL 4033766, *4 (N.D. Ga. May 19, 2025), R&R adopted, 2025 WL 4033767 (N.D. Ga. June 3, 2025) ("It is longstanding precedent that '[f]or the purpose of a motion to compel arbitration, the Court may consider affidavits.'") (citing *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. App'x 863, 866 (11th Cir. 2006)).

*Id.* The claims to be arbitrated include "claims arising under…the Employee Retirement Income Security Act of 1974." *Id.*[4]

In addition, the Arbitration Agreement provides that the arbitration must be brought on an individual basis and not a class, collective, or representative action:

> **By agreeing to be subject to this Policy, you and Garda are each giving up the right to a jury trial, and you are giving up the right to commence, participate in, or recover through a class, collective or representative action for any Dispute arising out of your employment with or relating to Garda. You and Garda instead agree to arbitrate any such Dispute on an individual basis only.**

*Id.* at ¶ 1 (emphasis original).

Employees are not required to sign the Arbitration Agreement as a condition of employment and have the right to opt-out of the Dispute Resolution Policy, including the agreement to arbitrate, within 30 days of the date they acknowledge receipt of the Dispute Resolution Policy:

> **Opt-Out.** You may opt out of this Policy by sending an email to HRDepartment@garda.com. The email must include your name, job title, work location, and a statement that "I do not want to be subject to the Garda Dispute Resolution Policy and am electing to opt out of that Policy." An opt-out email must be sent within 30 days of the date you acknowledge receipt of this Policy. If the email is not sent in that time, your ability to opt out of this Policy will be waived. If an opt-out email is properly sent, Garda will send you a return email acknowledging your email, and you should retain a copy of that email. If you do not have access to email and would like to opt out, you may provide written notification to Garda Human Resources at HRDepartment@garda.com within 30 days of acknowledging this Policy, and Garda will provide you with a way to send the opt-out email. Any decision to opt out of this Policy will have no effect on your employment.

---

[4] The Arbitration Agreement includes limited carve-outs that are not applicable here, including claims under an employee benefit plan that specifies a different arbitration procedure and claims that cannot be subject to arbitration as a matter of law. *Id*. at Ex. A, Dispute Resolution Policy at ¶ 2. There is no other arbitration policy that applies to employee benefit plans sponsored by GardaWorld. *See* Ex. A, Marachly Decl. at ¶ 6. And while claims arising under ERISA § 502(a)(2) generally cannot be compelled into individual arbitration under current Eleventh Circuit case law, GardaWorld is only moving to compel Miley's and Green's ERISA § 502(a)(3) claims into individual arbitration.

*Id.* at ¶ 8.

Miley and Green electronically acknowledged the Dispute Resolution Policy set forth in the 2025 GardaWorld Employee Handbook in 2025 and did not exercise their right to opt out of the Dispute Resolution Policy. Ex. A, Marachly Decl. at ¶ 8.

### C.      Plaintiffs' Claims

Plaintiffs assert claims for individual relief under ERISA § 502(a)(3) and claims on behalf of the Plan under ERISA § 502(a)(2).  In particular, in Counts I through III, Plaintiffs allege that the wellness programs violate ERISA § 702(b), 29 U.S.C. § 1182(b), and seek relief under ERISA § 502(a)(3).  Compl. at ¶¶ 67-104.  Count V asserts claims for breach of fiduciary duty and engagement in self-dealing prohibited transactions and seeks relief under ERISA § 502(a)(3).  *Id.* at ¶¶ 106-114.[5]

Plaintiffs also assert claims for relief on behalf of the Plan pursuant to ERISA § 502(a)(2) for breach of fiduciary duty and engagement in unlawful prohibited transactions in Count IV of the Complaint.  *Id.* at ¶¶ 91-104.

### LEGAL ANALYSIS

**I.      SOLOMON-WALLACE'S CLAIMS SHOULD ALL BE DISMISSED PURSUANT TO RULE 12(b)(1)**

### A.      Relevant Standard

Article III limits federal court jurisdiction to "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  A suit brought by a plaintiff without Article III standing is not a "case or controversy." *See, e.g., Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021).

---

[5]      The Complaint contains two Count IVs.  *Compare* Compl. at ¶¶ 89-90 *with* Compl. at ¶¶ 104-105.  To avoid confusion, the "second" Count IV will be referred to as Count V.

In order to establish Article III standing, Solomon-Wallace must show, among other things, that she has suffered an injury that can be redressed by a court's favorable resolution of the matter. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-181 (2000). There is no ERISA exception to Article III's standing requirement. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020).

Motions to dismiss brought under Rule 12(b)(1) challenge the court's jurisdiction over the subject matter of the complaint, including a plaintiff's lack of standing. *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1359 (11th Cir. 2021); *Becker v. Citigroup Inc.*, 773 F. Supp. 3d 1380, 1383 (S.D. Fla. 2025) (same); *Thompson v. Ryder Sys., Inc.*, 2022 WL 18776108, \*2 (S.D. Fla. Oct. 11, 2022) (same). As shown below, Solomon-Wallace's execution of a valid release agreement and covenant not to sue moots her claims against GardaWorld and precludes her from establishing an injury that can be redressed by the Court. As such, her claims should be dismissed under Rule 12(b)(1).

### B. Solomon-Wallace's Claims Should Be Dismissed Pursuant To The Terms of Her Release Agreement And Covenant Not To Sue GardaWorld

` Solomon-Wallace's Release Agreement covers all of the ERISA claims that she is asserting against GardaWorld and releases it from any liability. Decl. of Marachly at ¶ 11, and Ex. 2, Release Agreement at pp. 1-2 (releasing GardaWorld from "any and all cause of action of any type," including ERISA claims). Solomon-Wallace also agreed not to accept any recovery in this action and covenanted not to sue on any released claims in the future. *Id.* at pp. 2-3. As a result, Solomon-Wallace cannot establish that she has a redressable injury in this case and her claims should be dismissed pursuant to Rule 12(b)(1) based on her lack of standing. *See, e.g., Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) ("We know of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action or threatened action but has settled

that suit, he retains standing to challenge the basis for that action"); *Cameron–Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1244 (11th Cir. 2003) ("The general rule is that settlement of a plaintiff's claims moots an action."); *Perez v. Avatar Holdings, Inc.*, 2008 WL 11470949, *3 (M.D. Fla. Mar. 5, 2008) ("if the settlement agreement is valid, it disposes of Plaintiff's claim against Defendant, and the [claims] must be dismissed, as moot, because…there is no longer a 'case or controversy' within the meaning of Article III of the Constitution"); *Labora v. MCI Telecommunications*, 1998 WL 1572719, *2 (S.D. Fla. July 20, 1998), *aff'd*, 204 F.3d 1121 (11th Cir. 1999) ("[m]oot cases lie beyond the judicial power because the case or controversy ceases to exist once the matter has been resolved"); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992) ("Settlement of a plaintiff's claims moots an action."); *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 828 Fed. App'x 734, 736 (2d Cir. 2020) (holding that a settlement agreement moots a party's claims where the agreement "reduce[s] [the] potential recovery ... to zero."); *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 107 (D.D.C. 2019), *aff'd*, 801 Fed. App'x 792 (D.C. Cir. 2020) (dismissing the lawsuit for lack of subject matter jurisdiction after finding that the plaintiff released her ERISA § 502(a)(2) fiduciary breach claims and therefore lacked standing to sue).[6]

---

[6] *See also Smith v. T–Mobile USA Inc.*, 570 F.3d 1119, 1123 (9th Cir. 2009) ("Because the plaintiffs voluntarily settled all of their claims after the district court's denial of certification, they have failed to retain a personal stake in the litigation and their case is moot. Accordingly, we dismiss the appeal for lack of jurisdiction."); *Majkowski v. Am. Int'l Grp., Inc.*, 2008 WL 5272193, *4 (N.D. Ill. Dec. 16, 2008) (dismissing the plaintiff's claims pursuant to Rule 12(b)(1) because "[t]he settlement agreement is a valid and enforceable document that binds the parties and moots [the plaintiff's] claims"); *Casimir v. Bridgecrest Credit Co., LLC*, 2021 WL 3081017, *4 (E.D. Wis. July 21, 2021) (holding that the plaintiff's claims were moot and subject to dismissal under Rule 12(b)(1) after the court found the plaintiff released all known and unknown claims that he had or may have had against the moving defendants).

II.     **ALL PLAINTIFFS' ERISA § 502(a)(2) CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)**

A.      **Relevant Standard**

To avoid dismissal on a Rule 12(b)(6) motion, a complaint must plead sufficient non-conclusory factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While well-pled allegations are accepted as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The Supreme Court has recognized that motions to dismiss are an "important mechanism for weeding out meritless claims," particularly class actions brought under ERISA.  *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As shown below, Plaintiffs' Complaint fails to state an ERISA § 502(a)(2) claim for breach of fiduciary duty or for violations of ERISA's prohibited transaction rules.  Consequently, the ERISA § 502(a)(2) claims asserted in Count IV of the Complaint should be dismissed in accordance with Rule 12(b)(6).

B.      **Plaintiffs' ERISA § 502(a)(2) Claims Should Be Dismissed Because They Do Not Plausibly Allege an Injury to the Plan**

ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008).  As such, to state a viable claim under ERISA § 502(a)(2), a plaintiff must plausibly allege that there was a loss to the plan.  *See id.*; *see also GardaWorld I*, 2025 WL 2484271, *6; *Cook v. Campbell*, 482 F. Supp. 2d 1341, 1357 (M.D. Ala. 2007) (finding that the plaintiffs' ERISA § 502(a)(2) claims were foreclosed because they were seeking damages "on their own behalf, not on behalf of the Plan");

11

*Byars v. Coca-Cola Co*., 2004 WL 1595399, *8 (N.D. Ga. Mar. 18, 2004) (recognizing that "a prerequisite to relief under ERISA section 502(a)(2)" is to "establish a loss to the plan).

In the Complaint, Plaintiffs allege that GardaWorld "with[eld] unlawful surcharges from participants' paychecks and us[ed] those funds to reduce its own financial obligations to the Plan." Compl. at ¶ 98.  In *GardaWorld I*, Judge Bell held that this same allegation only alleged individual harm and not harm to the Plan as a whole.  2025 WL 2484271, at *7.  Judge Bell also found that "Plaintiffs' remaining allegations, including failing to pay individual participants 'the full reward,' (which in any event, Plaintiffs do not allege they were themselves entitled to receive); 'fail[ure] to properly disclose material information about the wellness programs to participants;' and "administering a Plan that did not conform to ERISA's anti-discrimination requirements;' are all allegations of harm to individual Plan participants, not the Plan itself, and similarly fail.  *Id.* at *8. The same allegations are made here and should be rejected for the same reasons.  *Compare id. with* Compl. at ¶ 101.

Other courts have dismissed similar breach of fiduciary duty and prohibited transaction claims seeking relief under ERISA § 502(a)(2) due to the plaintiffs' failure to plausibly allege harm to the plan. *See, e.g.*, *Parker v. TTEC Holdings, Inc.*, -- F. Supp. 3d --,  2026 WL 917789, *6 (D. Colo. Mar. 30, 2026) (dismissing ERISA § 502(a)(2) breach of fiduciary duty and prohibited transaction claims for failure to allege harm to the plan and explaining, among other things, that plaintiff's allegation that the implementation of the allegedly unlawful tobacco-free wellness program "led to more employee contributions and required less employer contribution[s] does not allege harm to the plan because "the plan received the same amount of money either way"); *Noel v. Pepsico, Inc.*, 2026 WL 558118, *15 (S.D.N.Y. Feb. 27, 2026) (dismissing ERISA § 502(a)(2) breach of fiduciary duty claim and recognizing that, "while Plaintiff frames Defendants' use of the

12

funds to offset their own contributions as depriving the Plan of Plan assets and retaining employee contributions for themselves, the crux of her allegation is that Defendants ultimately contributed less of their own funds to the Plan, not that the Plan was shortchanged"); *Schultz v. Glens Falls Hosp.,* 2026 WL 850332, *12-13 (N.D.N.Y. Mar. 26, 2026) (dismissing ERISA § 502(a)(2) breach of fiduciary duty and self-dealing claims for failure to allege harm to the plan); *Chirinian v. Travelors Co.*, 2025 WL 2147271, *11 (D. Minn. July 29, 2025) (holding that the allegation that participants "lost millions of dollars in the form of unlawful wellness penalties for tobacco use that were withheld from their paychecks … only alleges 'individual injuries distinct from plan injuries'" and dismissing ERISA § 502(a)(2) claims); *Trout v. Meijer, Inc.*, 2026 WL 1098213, *10-13 (W.D. Mich. Apr. 23, 2026) (dismissing ERISA § 502(a)(2) claims after finding, among other things that the plaintiff had not sufficiently alleged that the collection of the tobacco surcharges "harmed the plan itself, rather than just the plan participants"); *Williams v. Bally's Mgmt. Grp., LLC*, 813 F. Supp. 3d 263, 273 (D.R.I. 2025) (holding that the allegations that defendant "pocketed the tobacco surcharge to the detriment of the Plan" and "enriched itself at the expense of the Plan" were insufficient to allege harm to the Plan, and recognizing that, "if the tobacco surcharge was indeed improperly collected, the proper remedy – and the one primarily sought by [plaintiff] – would be for the surcharge to be returned to Plan participants, and not to the Plan itself"); *Sec'y of Labor v. Macy's, Inc*., 2021 WL 5359769, *8 (S.D. Ohio Nov. 17, 2021) (holding that, even assuming employer reduced its funding to offset tobacco surcharge process, "the net impact on the Plan of Defendants' alleged violations of their fiduciary duties was neutral, rather than giving rise to a plausible inference of losses to the Plan resulting from the Defendants' conduct" and, "[t]hus, as a matter of law, any underpayment of benefits by Defendants does not in

13

itself represent losses to the Plan allowing suit under [ERISA § 502(a)(2), 29 U.S.C.] § 1132(a)(2)").

### C. The Prohibited Transaction Claims Should Be Dismissed For The Separate Reason That Plaintiffs Have Not Sufficiently Alleged An Actionable Transaction Involving The Use Of Plan Assets

Plaintiffs seek relief under ERISA § 502(a)(2) for two types of prohibited transaction claims: (1) a claim that GardaWorld's withholding of "surcharges from participants' paychecks and [use of] those funds to reduce its own financial obligations to the Plan" caused the Plan to "engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of" GardaWorld in violation of ERISA § 406(a), 29 U.S.C. § 1106(a); and (2) a claim that GardaWorld's retention of the surcharges "increased its own corporate assets and saved [it] money that it would have otherwise had to contribute to the Plan," which constitutes the unlawful use of Plan assets for its own benefit in violation of ERISA § 406(b), 29 U.S.C. § 1106(b).  Compl. at ¶¶ 98-101.  In addition to being dismissed for a failure to allege harm to the Plan as discussed above, these claims should be dismissed for three additional reasons.

First, Plaintiffs' prohibited transaction claims should be dismissed because they are based on conclusory and speculative allegations. *See Williams v. Bally's Management Group, LLC*, 813 F. Supp. 3d 263, 273 (D.R.I. 2025) (dismissing fiduciary duty claim because, *inter alia*, plaintiffs' claims that defendant "pocketed the tobacco surcharge to the detriment of the Plan" and "enriched itself at the expense of the Plan" were "speculative" and "conclusory").

Second, Plaintiffs' prohibited transaction claims should be dismissed because Plaintiffs have not pled the requisite "transaction" required to assert an ERISA § 406 claim.  *See Lockheed Corp. v. Spink,* 517 U.S. 882, 888–89 (1996) ("in order to sustain an alleged transgression of [ERISA] § 406(a), a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction."); *Cano v. Home Depot, Inc.,* 2025 WL 2589567, *7 (N.D. Ga. Aug. 26,

2025) ("In order to allege a violation of [ERISA § 406(a)(1) or (b), 29 U.S.C.] § 1106(a)(1) or (b), the plaintiff must allege an unlawful transaction").  An employer's collection of premiums and/or surcharges and use of those funds is not a "transaction" for purposes of ERISA's prohibited transaction rules.  *See e.g., Hannan v. Hartford Fin'l Serv., Inc.*, 688 Fed. App'x 85, 90-91 (2d Cir. 2017) (concluding that the complaint failed to state a viable prohibited transaction claim because the employer's "use of cost-reduction strategies to minimize its cost of providing employees [plan benefits] does not constitute a transfer for its own benefit or self-dealing in its own interest"); *Green v. Progressive Corp.*, 2026 WL 785004 (S.D. Ohio Mar. 30, 2026) (rejecting argument that the collection of tobacco surcharges was a "transaction" for purposes of ERISA's prohibited transaction rules); *Amatangelo v. Nat'l Grid USA Serv. Co.*, 2011 WL 3687563,*7 (W.D.N.Y. Aug. 23, 2011) (no prohibited transaction where the employer used employee contributions to pay premiums for plan benefits).  This is true even if the employer's use of those premiums saves the employer "millions of dollars in contribution costs."  *See, e.g., Cain v. Siemens Corp.*, 2025 WL 2172684, *5 (D.N.J. July 31, 2025) (finding that an allegation that "Defendant engaged in self-dealing by using Forfeitures 'as a substitute for [its] own contributions owing to the Plan, thereby saving [it] millions of dollars in contribution costs'" did not state a viable self-dealing prohibited transaction claim).

And third, Plaintiffs have not sufficiently alleged that the challenged surcharges were Plan assets.  As Judge Bell recognized, the allegation that "GardaWorld withheld surcharges from Plaintiffs' paychecks and 'deposited [them] into its own accounts,'" is insufficient to support a prohibited transaction claim because the "payments do not become Plan assets until 'the earliest date on which [they] can reasonably be segregated from the employer's general assets.'" *GardaWorld I*, 2025 WL 2484271, at *8 (citing *Phelps v. CT Enterprises*, 194 Fed. App'x 120, 124

15

(4th Cir. 2006)); 29 C.F.R. § 2510.3-102(c) (establishing that employee contributions under an employee welfare benefit plan become Plan assets not later than 90 days from collection).  Just like in *GardaWorld I*, "Plaintiffs have not alleged that GardaWorld retained Plan assets beyond 90 days or used the contributions inappropriately (to the detriment of the Plan)." *GardaWorld I*, 2025 WL 2484271, at *8.  As a result, Plaintiffs' prohibited transaction claims fail as a matter of law. *See id.*; *see also Schultz*, 2026 WL 850332, at *12 (explaining that "even if the surcharge proceeds eventually became Plan assets, the complaint is devoid of allegations that Defendant retained these funds beyond the ninety-day limitation. Plaintiff merely alleges that the funds were used to offset Defendant's contributions to the Plan" and finding that, because "the complaint is devoid of allegations that the Plan explicitly provides that unpaid contributions are Plan assets, Plaintiff has not adequately alleged a violation of [ERISA § 406,] 29 U.S.C. § 1106").

III.   **MILEY'S AND GREEN'S REMAINING CLAIMS, WHICH ALL SEEK RELIEF UNDER ERISA § 502(a)(3), MUST BE COMPELLED INTO INDIVIDUAL ARBITRATION**

A.   **Relevant Standard**

"[W]hen presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Amargos v. Verified Nutrition, LLC*, 653 F. Supp. 3d 1269, 1272 (S.D. Fla. 2023). "The presence of a valid arbitration provision raises a strong presumption in favor of enforcement." *Id*. (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-631 (1985)).

B.   **The Arbitration Agreements Are Valid And Enforceable**

Under the FAA, the enforceability of an arbitration agreement is a question of contract law. *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (considering enforceability of arbitration agreement under the FAA and explaining that "state law generally governs whether

an enforceable contract or agreement to arbitrate exists").  Florida law applies here since Miley's and Green's claims arise out of actions occurring in Florida, the Parties agree that "every key aspect of the Plan at issue was conceived, implemented, and administered from Florida" (*see* ECF No. 18 at 3), and the Arbitration Agreement does not include a contrary choice-of-law provision. *See Bhim v. Rent-A-Center, Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (citing *Williams v. Eddie Acardi Motor Co.*, 2008 WL 686222, *4 (M.D. Fla. March 10, 2008); *see also Seth v. Rajagopalan*, 2013 WL 11927712, *6 (S.D. Fla. Jan. 25, 2013) (recognizing that the factors used to determine which state's law to apply include the place where the injury occurred, the place where the conduct causing the injury occurred, and the place with the most significant relationship to the occurrence and the parties).

Under Florida law, an arbitration agreement, like any other contract, is enforceable if there is an offer, acceptance, and consideration. *Med–Star Cent., Inc. v. Psychiatric Hosp. of Hernando Cty., Inc.*, 639 So. 2d 636, 637 (Fla. 5th DCA 1994).  All three elements of a valid contract are satisfied here.

First, GardaWorld offered employees, including Miley and Green, the opportunity to agree to mandatory arbitration through the Dispute Resolution Policy included in the 2025 Employee Handbook.  Marachly Decl. at ¶ 6, Ex. 1, Arbitration Agreement at p. 1.

Second, Miley and Green accepted the terms of the Arbitration Agreement by acknowledging the 2025 Employee Handbook, including the Dispute Resolution Policy containing the arbitration agreement, and failing to exercise their right to opt-out of the Dispute Resolution Policy.  Marachly Decl. at ¶ 8; *Dandridge v. Sherwin Williams, Inc.*, 2021 WL 2228394, *3-4 (M.D. Fla. May 26, 2021) (finding that the plaintiff agreed to arbitration by "clicking 'I accept,'" and "clicking 'submit' to electronically sign" an offer letter expressly accepting the employer's

"Corporate Employment Dispute Mediation and Arbitration Policy" and granting the defendant's motion to compel arbitration).

And third, there is consideration in the form of the mutuality of the agreement to arbitrate. *Dirocco v. Victory Mktg. Agency, LLC*, 2016 WL 11468578, \*4 (M.D. Fla. Jan. 12, 2016), *objs. sustained in part*, 2016 WL 1266932 (M.D. Fla. Apr. 1, 2016) (explaining that "Florida courts have recognized that the agreement of a party to submit to arbitration is sufficient consideration to support the other party's agreement to do the same.") (citing *Kinko's, Inc. v. Payne*, 901 So.2d 354, 355 (Fla. 2nd DCA 2005) and *Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So.2d 658, 661 (Fla. 4th DCA 2008)).  Indeed, the Arbitration Agreement makes clear that once employees accept GardaWorld's offer, the Dispute Resolution Policy becomes binding on both the employees and GardaWorld.  *See* Ex. A, Decl. of Marachly at Ex. 1, Arbitration Agreement at p. 1 ("This Dispute Resolution Policy ("Policy") requires you and Garda (the 'Parties') to submit any and all disputes as described below to binding individual arbitration."); *id.* at ¶ 1 ("By agreeing to be subject to this Policy, you and Garda are each giving up the right to a jury trial, and you are giving up the right to commence, participate in, or recover through a class, collective or representative action for any Dispute arising out of your employment with or relating to Garda.  You and Garda instead agree to arbitrate any such Dispute on an individual basis only…").

**C.     Miley And Green Agreed To Arbitrate Their ERISA § 502(a)(3) Claims Against GardaWorld**

Counts I, II, III, and V are all ERISA claims that seek relief against GardaWorld pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  Compl. at ¶¶ 72, 79, 89, 114.  The Arbitration Agreement expressly requires that any ERISA claim brought against GardaWorld be submitted to binding arbitration:

> Any and all past, present, or future claims that Garda may have against you, or that you may have against Garda (or any of Garda's parents, affiliates, partners,

members, employees, officers, directors, owners, shareholders, investors, insurers and agents) arising out of your employment with or relating to Garda, whether arising before, during, or after your employment, including but not limited to termination of employment (collectively, the "Dispute(s)"), will be submitted for resolution to mandatory, binding arbitration… this Policy and its associated arbitration requirement apply to all claims, including but not limited to federal, state and local law claims…, including, without limitation, claims arising under the Employee Retirement Income Security Act of 1974."

Ex. A, Decl. of Marachly at Ex. 1, Arbitration Agreement at ¶ 1. In addition, the Arbitration Agreement provides that the arbitration must be brought on an individual basis and not a class, collective, or representative action:

> **By agreeing to be subject to this Policy, you and Garda are each giving up the right to a jury trial, and you are giving up the right to commence, participate in, or recover through a class, collective or representative action for any Dispute arising out of your employment with or relating to Garda. You and Garda instead agree to arbitrate any such Dispute on an individual basis only.**

*Id.* (emphasis original).   In accordance with the terms of Miley's and Green's Arbitration Agreements with GardaWorld, their ERISA § 502(a)(3) claims should be compelled into arbitration on an individual basis.

### D.      GardaWorld Has Not Waived Its Right To Arbitrate

While there is no "rigid" test for determining when a party has waived its right to arbitrate, relevant factors include "whether the allegedly defaulting party participated in litigation, substantially delayed its request for arbitration, or participated in discovery." *Amargos*, 653 F. Supp. 3d at 1275.  Ultimately, the key inquiry is "whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right." *Truly Nolen of Am., Inc. v. King Cole Condo. Ass'n, Inc.*, 143 So. 3d 1015, 1017 (Fla. Dist. Ct. App. 2014) (quoting *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)).

Here, GardaWorld promptly moved to compel arbitration and has not participated in discovery in this case.  The fact that GardaWorld filed an agreed motion to transfer this matter

19

from the Northern District of Illinois does not constitute a waiver of its right to enforce its arbitration agreements with Plaintiffs. *See, e.g., Truly Nolen of Am.*, 143 So. 3d at 1017 (finding that the filing of a motion to transfer venue did not waive the party's right to arbitrate); *13 Parcels LLC v. Laquer*, 104 So. 3d 377, 380 (Fla. Dist. Ct. App. 2012) (rejecting argument that a motion to transfer filed by the appellants was sufficient to waive the right to arbitrate).   Given that GardaWorld has not taken any action inconsistent with its arbitration right, Plaintiffs Miley's and Green's ERISA § 502(a)(3) claims should be compelled into arbitration on an individual basis.

## CONCLUSION

For the reasons set forth above, GardaWorld respectfully requests that (1) all of Solomon-Wallace's claims be dismissed pursuant to Rule 12(b)(1) due to her failure to establish that she has Article III standing; (2) all of the ERISA § 502(a)(2) claims be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted, including by failing to allege harm to the Plan; and (3) Miley's and Green's remaining claims, which all seek relief under ERISA § 502(a)(3), be compelled into individual arbitration pursuant to the terms of their Arbitration Agreement.

## LOCAL RULE 7.1(a)(3) CERTIFICATION OF COUNSEL

Counsel for Defendant certifies that they have conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised in the motion to compel arbitration and that the parties were unable to resolve the issues raised in the motion.

Respectfully submitted,

**GARDAWORLD CASH SERVICES, INC. D/B/A GARDAWORLD CASH**

By: _Lindsey R. Camp_
_One of its attorneys_

Lindsey R. Camp
Florida Bar No. 84138
HOLLAND & NIGHT LLP
777 South Flagler Drive, Ste. 1900
West Palm Beach, FL 33401
Phone: 561-833-2000
Email: Lindsey.camp@hklaw.com

Maxwell C. Hansen
_Appearing pro hac vice_
HOLLAND & NIGHT LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, IL 60606
Phone: 312-715-5791
Email: maxwell.hansen@hklaw.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing has been served by the

Court's electronic filing system and via email on:


Oren Faircloth, Esq.
Siri & Glimstad LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
(212) 532-1091
Email: ofaircloth@sirillp.com


/s/*Lindsey R. Camp*
Lindsey R. Camp

22